Eastern District of Kentucky
FILED

DEC - 9 2011

At Ashland
LESLIE G. WHITMER
Clerk, U.S. District Court

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

KELLY C. KIRKWOOD,

      Plaintiff,

v.

WARDEN RICHARD IVES, *et al.*,

      Defendants.

Civil Action No. 6:11-00210-HRW

**MEMORANDUM OPINION
AND ORDER**

***** ***** ***** *****

Plaintiff Kelly C. Kirkwood, confined in the United States Penitentiary-McCreary, ("USP-McCreary") in Pine Knot, Kentucky, has filed a *pro se* Complaint asserting various constitutional claims under: (1) 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and (2) the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.* [D. E. No. 2].[1] Kirkwood has also filed a First Motion to Amend his Complaint, [D. E. No. 5]; a Second Motion to Amend his Complaint, [D. E. No. 9]; and a Third

---

[1]

      Kirkwood named the following eleven defendants, all USP-McCreary officials, in his original Complaint: (1) Richard B. Ives, Warden; (2) Eric D. Wilson, Former Warden; (3) "J." Ray Ormond, Associate Warden; (4) Sheila R. Mattingly, Inmate Systems Supervisor; (5) "P." Poston, Mail Room Supervisor; (6) "J." Cornelius, Mail-room Specialist; (7) "K." Johnson, Mail Room Specialist; (8) "S. Saylor," Mail Room Specialist; (9) K. Williams, Mail Room Specialist; (10). "T." Doolin, Mail Room Specialist; and (11) Jane and John Doe Defendants of USP-McCreary.

Motion to Amend his Complaint, [D. E. No. 20].

Because Kirkwood has been granted *in forma pauperis* status and is asserting claims against government officials, the Court now screens his original Complaint, and his three tendered Amended Complaints, pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Both of these sections require dismissal of any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *Id.*; *see also McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

As explained below, the Court will dismiss some of Kirkwood's claims; allow other claims to proceed; grant his First Motion to Amend the original Complaint, and deny his Second and Third Motions to Amend the original Complaint.

## CLAIMS ASSERTED

Kirkwood alleges that various Mail Room employees of USP-McCreary opened his specifically marked legal mail out of his presence on various dates between December 21, 2010, and October 27, 2011. He claims that some of the defendants retaliated against him for complaining about the alleged legal mail-interference incidents, and that other defendants took no corrective action when he complained to them afterwards about the alleged legal mail-opening incidents.

Kirkwood alleges that these actions violated his attorney-client privilege

2

protected by the Sixth Amendment of the United States Constitution, his rights guaranteed under the First and Fifth Amendments of the United States Constitution, and the APA. He seeks compensatory damages, punitive damages, and injunctive relief to prevent future violations of his constitutional rights, *i.e.*, an Order directing prison officials to follow the Bureau of Prisons ("BOP") policies and procedures requiring them to open incoming legal mail in the prisoner's presence.

## ALLEGATIONS OF THE COMPLAINT
## AND THREE MOTIONS TO AMEND

The following is a summary of the events as alleged by Kirkwood.

On July 27, 2011, Kirkwood filed a *pro se* civil rights Complaint asserting constitutional claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [D. E. No. 2]. Kirkwood alleged that on December 21, 2010, and March 21, 2011, USP-McCreary mail-room specialists and "Jane/John Doe Defendants" opened, outside of his presence, documents that his attorney, Henry E. Marines, had mailed to him in an envelope clearly marked as "legal mail." Kirkwood alleged that the Mail Room specialists rummaged through his legal documents, removed, and/or re-organized the contents of the mailing. Kirkwood asserts that subsequent to these alleged events, he complained to various other USP-McCreary administrative

officials about the alleged legal mail-opening events, but that they ignored his complaints and/or took no action in response to his complaints.

Kirkwood attached documentation showing that he exhausted his claim that the Mail Room staff improperly opened his legal mail on December 21, 2010. See Exhaustion Documents, [D. E. No. 2-1, pp. 5, 7, and 9]. However, Kirkwood stated that he did not exhaust his claims stemming from the subsequent alleged legal-mail interference incident of March 21, 2011. He offered two reasons for failing to do so: (1) that USP-McCreary officials told him that it was unnecessary to exhaust additional mail interference claims,[2] and (2) that the USP-McCreary Mail Room staff opened prisoners' legal mail at such an alarming rate that ". . . it is infeasible [sic] to pursue BOP administrative remedies for each and every occurrence." *See* Original Complaint, [D. E. No. 2, p. 8, ¶ 17].

On August 31, 2011, Kirkwood filed a "Motion for Leave to Supplement Complaint," [D. E. No. 5]. In his tendered First Amended Complaint, [D E. No. 6],

---

[2]

On this issue, Kirkwood stated as follows:

The Plaintiff initiated his BOP administrative remedies on December 22, 2010, related to the Mailroom staff's improper opening of his legal mail on or about December 21, 2010. Since he had already submitted a BP-8 complaining about the December 22, 2010, incident and USP-McCreary's policy generally, prison staff advised Plaintiff that he was not required to file separate/repeated BP-8's for the subsequent mishandling of the Plaintiff's legal mail.

*See* Complaint, [D. E. No. 2, p. 8, ¶ 14].

4

Kirkwood asserted claims against USP-Warden Richard Ives in his individual capacity; asserted additional constitutional claims against Defendants Ormond, Mattingly, and Cornelius; and asserted new claims stemming from alleged legal mail interference at USP-McCreary between August 8, 2011, and August 26, 2011.

On October 7, 2011, Kirwkood filed a motion to amend his original Complaint for the second time. [D. E. No. 9]. In his tendered Second Amended Complaint, [D. E. No. 10], he asserted new claims relating to legal mail interference incidents alleged to have occurred at USP-McCreary between August 26, 2011, and October 3, 2011; named USP-McCreary mail Room Specialist "M." Daniels as a new defendant; and asserted new retaliation claims against Defendants Mattingly and Cornelius.

On November 8, 2011, Kirwkood filed a motion to amend his original Complaint for a third time. [D. E. No. 20]. In his tendered Third Amended Complaint, [D. E. No. 20-1], he named USP-McCreary Associate Warden "H." Quay and Michelle Fuseymore, Regional Counsel of the BOP's Mid-Atlantic Regional Office, as additional defendants; asserted additional claims relating to legal mail tampering incidents alleged to have occurred at USP-McCreary between September 28, 2011, and October 27, 2011; and asserted new claims against Defendants Mattingly, Daniels, and Cornelius.

## DISCUSSION

### 1. Alleged Opening of Legal Mail on December 21, 2010
#### A. Claims Against USP-Mail Room Staff

Kirkwood alleges that on December 21, 2010, USP-McCreary Mail Room Specialists "P." Poston, "J." Cornelius, "K." Johnson, "S." Saylor, "K." Williams, and "T." Doolin, opened his clearly marked legal mail out of his presence. [D. E. No. 2, p. 8, ¶ 16]. The Court will require these defendants, in their individual capacities, to respond to the First, Fifth, and Sixth Amendment claims stemming from the alleged events of December 21, 2010, set forth in his original Complaint, [D. E. No. 2].[3]

Kirkwood has asserted claims against these defendants in their official capacities, but a *Bivens* claim may only be properly asserted against individual federal employees in their individual capacities. "[A] *Bivens* claim [for damages] may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (citing *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir.1983), *cert. denied*, 466 U.S. 958 (1984)).

When damages are sought against federal employees in their official capacities, the damages in essence are sought against the United States, and such claims cannot

---

3

Kirkwood is advised that his failure to identify the unknown John and Jane Doe Defendants, and have them served within 120 days after the date of this Order, will result dismissal of the claims asserted against them.

be maintained. *Clay v. United States*, No. 05-CV-599-KKC, 2006 WL 2711750 (E.D. Ky. Sept. 21, 2006). Accordingly, Kirkwood's official capacity claims against these defendants will be dismissed with prejudice for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

### B. Claims Against Wilson, Ives, Ormond, and Mattingly

Kirkwood's individual capacity constitutional claims against former USP-McCreary Warden Eric Wilson, current Warden Richard Ives, Associate Warden Ormond, and Inmate Systems Supervisor Mattingly, stemming from the alleged December 21, 2010, legal mail-opening incident, will be dismissed for failure to state a claim upon which relief can be granted.

In order to state a claim of supervisory liability, a plaintiff must show that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *Rose v. Caruso*, 284 F. App'x. 279, 282-83 (6th Cir. 2008); *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). Kirkwood does not allege that these defendants were personally involved in the alleged opening of his legal mail out of his presence on December 21, 2010, or that they knew of the alleged violations before the fact but failed to prevent them.

Kirkwood alleged *only* that he informed them of the alleged December 21,

7

2010, incident after it occurred; that they failed to investigate or take other actions he deemed reasonable; and that they responded (a) that the Mail Room follows BOP procedures and (b) that Kirkwood was free to file a grievance. *See* Original Complaint, [D. E. No. 2, pp. 6-8, §§ 4,6,8, and 15].

Under such facts, liability could be imposed against these defendants only under the doctrine of *respondeat superior*, which is insufficient to establish a supervisor's liability in a *Bivens* action. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Kesterson v. Luttrell*, 172 F.3d 48 (6th Cir. 1998) (Table); *Jones v. City of Memphis*, 586 F.2d 622, 625 (6th Cir. 1978). A supervisory government employee is only liable for his or her own misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 (2009). Ormond's denial of Kirkwood's BP-9 "Request for Administrative Remedy" on February 25, 2011, *see* D. E. No. 2-1, p. 5, does not qualify as a Fifth Amendment due process claim. *Bivens* liability can not be established simply because a supervisor denies an administrative grievance or fails to act based upon information contained in a grievance. *Alder v. Correctional Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

## C. Alleged APA Violations

Kirkwood alleges that the defendants' actions and/or omissions violated the

8

APA, which allow "any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in a court.'" *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701-06). The APA authorizes a reviewing court to:

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (B) contrary to constitutional right, power, privilege, or immunity....

5 U.S.C. § 706(1)-(2)(emphasis added); *see also Darby v. Cisneros*, 509 U.S. 137, 143-47 (1993) (discussing the structure of the judicial-review sections of the APA).

The APA is, by its nature, very broad in scope; absent some statutory or other exception, the APA's "comprehensive provisions" provide the backup or default remedies for all interactions between individuals and all federal agencies. 5 U.S.C. §§ 702, 704; *Webster*, 486 U.S. at 599. Kirkwood did not, however, name any federal agency as a defendant in his original Complaint, only ten individuals and various unknown John and Jane Doe Defendants.

Further, Kirkwood did not allege that he was harmed because of *agency* action, or that he was adversely affected or aggrieved by *agency* action, which § 706

9

requires. Instead, Kirkwood alleges only that several individually named Mail Room defendants violated his First, Fifth and Sixth Amendment rights by allegedly opening his marked legal mail out of his presence and that afterwards, that he told USP-McCreary administrators about the alleged mail-opening incident, and that the administrators failed to investigate or take corrective action.

The APA neither allows claims against individuals nor provides a right to a jury trial. *Western Radio Services Co. v. U.S. Forest Service*, 578 F.3d 1116, 1123 (9th Cir. 2009). Claims of constitutional wrongdoing by individual federal officers must be asserted under 28 U.S.C. § 1331, pursuant to the *Bivens* doctrine.

Because the APA provides no basis for recovery against any of the individually named defendants, Kirkwood's APA claims will be dismissed with prejudice for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

### 2. Alleged Opening of Legal Mail on March 21, 2011

Kirkwood admitted in his Original Complaint that he did not administratively exhaust his claims stemming from the subsequent alleged legal mail opening incident of March 21, 2011. Although he claimed in one paragraph of his original Complaint that USP-McCreary officials told him that exhaustion of the March 2011 claims was not required, he stated in a subsequent paragraph of that same Complaint that the alleged legal-mail opening activity was so rampant that exhaustion of every episode

10

was not feasible. That statement strongly suggests that as to his March 21, 2011,

claims, Kirkwood unilaterally decided to forego the BOP's three-step administrative

exhaustion process.[4]

Regardless of the reason, Kirkwood's excuses for failing to exhaust his March

21, 2011, claims run afoul of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.

§ 1997e(a), which requires state and federal prisoners to exhaust all available

administrative remedies before filing a federal civil action challenging prison

conditions. *See also, Porter v. Nussle*, 534 U.S. 516, 525 (2002); *Booth v. Churner*,

532 U.S. 731, 741 (2001). Additionally, in *Woodford v. Ngo*, 548 U.S. 81 (2006), the

Supreme Court held that exhaustion of administrative remedies must be done

"properly," which means going through all steps that the agency holds out, obeying

all directions, and adhering to all deadlines set by the administrative rules. *Id.* at 90.

---

[4]

The BOP's Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-542.19, is available to BOP inmates complaining about any aspect of their confinement. Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. *See* §542.15.

The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

Where a prisoner alleges a series of constitutional violations, he is not excused from administratively exhausting the later episodes merely because they follow earlier alleged episodes within a short period of time. In *Siggers v. Campbell*, No. 07-12495, 2008 WL 5188791 (E. D. Mich. December 10, 2008) prisoner Siggers alleged that he did not file grievances relating to several mail rejections because prison officials had verbally advised him to take to take other steps instead of pursuing the written grievance procedures applicable to Michigan prison prisoners.

The district court rejected Sigger's excuse for failure to exhaust later episodes of alleged mail-opening, stating that "This does not, however, excuse Siggers from having to comply with the published administrative rules, which require prisoners to contest their mail rejections by first requesting a hearing and then, if they do not agree with the result of the hearing, by filing a grievance." [*Id.*], at *3. The court also rejected Siggers' claim that he did not need to file grievances with respect to later mail rejections that occurred following an earlier grievance on the theory that any additional grievances would have been rejected as duplicative, *id.*, stating as follows:

> This argument fails because, as the Sixth Circuit has noted, "If [the prisoner] had filed a grievance that was denied as duplicative he would have exhausted administrative remedies and been permitted to file a complaint. However, he may not merely assume that a grievance would be futile and proceed directly to federal court with his complaints." *Wells v. Neva*, 234 F.3d 1271 (Table), 2000 WL 1679441 (6th Cir.2000). Accordingly, Siggers' claim that any subsequent grievances

would have been rejected as duplicative does not excuse him from properly exhausting his claims by filing the required grievances.

*Siggers*, 2008 WL 5188791 at *3. *See also*, *Rashaw-Bey v. Carrizales*, No. 09-3075-JAR, 2010 WL 3613953, at *5 (D. Kan. September 3, 2010) (refusing to consider unexhausted claims where prisoner had alleged a series of constitutional violations).

When the affirmative defense of failure to exhaust appears on the face of the complaint, as it does in Kirkwood's original Complaint with respect to his March 21, 2011, legal mail claims, a district court can dismiss the claims *sua sponte* on the grounds that it fails to state a claim. *Jones v. Bock*, 549 U .S. 199, 214-15 (2007); 28 U.S.C. § 1915A(b)(1)); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (affirming *sua sponte* dismissal of a PLRA case for failure to state a claim predicated on failure to exhaust, where the complaint itself showed that the prisoner failed to exhaust his administrative remedies).

A district court can dismiss prisoner claims, *sua sponte*, where failure to exhaust was apparent from the face of the complaint. *Walker v. Baker*, No. 6:10-CV-68-ART (E.D. Ky.) [R. 9 & 10, June 24, 2010]; *Smith v. Lief*, No. 5:10-00008-JMH, 2010 WL 411134 at *4 (E.D. Ky. January 27, 2010); *Gunn v. Kentucky Depart. Of Corrections*, No. 07-103, 2008 WL 2002259, * 4 (W.D. Ky. May 7, 2008); *Deruyscher v. Michigan Dept. of Corrections Health*, No. 06-15260-BC, 2007 WL

1452929, at \*3 (E.D. Mich. May 17, 2007).

Accordingly, Kirkwood's constitutional claims stemming from the alleged March 21, 2011, events, will be dismissed without prejudice to the full exhaustion of those claims and the filing of another *Bivens* action.

### 3. Motion to File First Amended Complaint

Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend his Complaint once as a matter of right before a responsive pleading is served. Because Kirkwood did not need leave of Court to file his First Amended Complaint, the Court will grant Kirkwood's motion to file a First Amended Complaint, [D. E. No. 5], and will instruct the Clerk of the Court to mark his tendered First Amended Complaint, [D. E. No. 6], as having been filed on August 31, 2011.

In his First Amended Complaint, Kirkwood alleged that the USP-McCreary Mail Room staff interfered with his incoming legal mail between August 8, 2011, and August 26, 2011, and that the Mail Room staff refused to designate the mail delivery as having been opened prior to delivery. Kirkwood further alleged that he submitted a "cop out" form to Defendant Ormond; that on August 19, 2011, he verbally informed Warden Ives about the alleged legal mail opening event of August 9, 2011; that Ives allegedly stated that be believed Kirkwood's allegations, but that Ives did not appear concerned about Kirkwood's claims and did not make any written notes

14

about his allegations. *See* Amended Complaint, [D. E. No. 6, p. 4, §§ 10-11].

Once again, it is patently clear from the face of the First Amended Complaint that Kirkwood did not and *could not* have exhausted the claims set forth in that submission. The alleged events occurred between August 8, 2011, and August 26, 2011. Kirwood filed his First Motion to Amend, and tendered his First Amended Complaint, on August 31, 2011, just days after the alleged events about which he complained. The BOP's administrative remedy process takes approximately ninety days to complete, absent extensions, so it is obvious that Kirkwood short-circuited the exhaustion process with respect these claims.

Accordingly, Kirkwood's claims set forth in his First Amended Complaint will be dismissed without prejudice to him fully exhausting those claims through the BOP's administrative remedy process and filing another *Bivens* action.

### 4. Motions to File Second and Third Amended Complaints

In his tendered Second and Third Amended Complaints, Kirkwood alleged that USP-McCreary Mail Room officials improperly altered, opened, or interfered with his legal mail between August 26, 2011, and October 3, 2011, and again between October 5, 2011, and October 27, 2011.

In his tendered Second Amended Complaint, Kirkwood alleged that on September 27-28, 2011, Defendants Daniels and Cornelius refused to give him what

he (Kirkwood )considered legal mail from his attorney, Henry E. Marines, because the packages purportedly contained the redacted transcripts of other inmates, not Kirkwood's, they did not constitute "legal mail." [D. E. No. 10, pp. 3-4, §§ 4-9]. Kirkwood alleged that the USP-McCreary prison officials failed to investigate and take corrective action, and that some USP-McCreary officials retaliated against him for complaining about this new form of alleged improper legal mail-opening activity.

In his tendered Third Amended Complaint, Kirkwood alleged that on various dates in October, 2011, someone removed the postage and post-marks from mailings he had received from other federal courts and/or opened mailings he had received from other federal courts. [D. E. No. 20-1, p. 3, ¶¶ 3-5, 12, 19, 23, 25].

He again alleged that with respect to these recent events, various USP-McCreary prison officials failed to take corrective action; that his counselor, "Mr. Wood," and another prison official he identified as "Defendant Quay," failed to respond to his informal BP-8 administrative grievance; and that some USP-McCreary officials retaliated against him for complaining about this new form of alleged improper legal mail-opening activity. [*Id.*, pp. 5-10]. Kirkwood also asked to name Wood, Quay, and Michelle Fuseymore,[5] as additional defendants, and to assert new

---

[5] Kirkwood alleges that Fuseymore, counsel for the BOP's Mid-Atlantic Regional Office, violated the his constitutional rights and the APA by advising USP-McCreary officials that the legal mail containing transcripts of other inmates' legal proceedings should be rejected. As discussed,

claims against several already named-defendants. [*Id.*, pp. 8-9, ¶¶ 1-4].

Leave to amend is liberally granted, except when the amendment would be futile. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993); *Newell v. Brown*, 981 F.2d 880 (6th Cir. 1992). In this case, both of the requested amendments would be futile because it is obvious from the face of both of the tendered Amended Complaints that from a chronological perspective, Kirkwood did not exhaust, and *could not* have exhausted, any of his more recent constitutional claims, all of which are factually different from the claims he alleged in his original Complaint.

The BOP's administrative remedy process takes approximately ninety days to complete, absent extensions. Kirkwood has ignored the BOP's exhaustion process and has prematurely asserted these new claims. To the extent the Kirkwood alleges retaliatory action by some USP-McCreary staff members, *see* D. E. No. 201-, pp. 5-6, § 14, he was required to have administratively exhausted that specific claim, which he failed to do. *See Garrison v. Walters*, 18 F. App'x 329, 331, (6th Cir. 2001) ("Moreover, at both . . . levels of the grievance process, Garrison complained that Walters had improperly confiscated his photo album, but he did not state any facts that would have indicated that he was grieving Walters's alleged retaliatory

violations of the APA arise solely from agency action, not the alleged actions of individual federal officials. As also noted, Kirkwood has not exhausted any of his claims against Fuseymore.

17

conduct."); *McDonald v. Briggs*, No. 08-CV-11731, 2010 WL 727583, at *10 (E.D. Mich. February 24, 2010).

Further, to the extent that Kirkwood argues that he attempted to comply with the BOP's grievance process but that he was unable to progress past the informal grievance (BP-8) stage because of Woods, Quay, or other officials, his argument fails. A prison official's failure to respond to informal grievances does not prevent a prisoner from pursuing formal grievances.

In *Red Kettle v. Lappin*, No. 08-02029, 2009 WL 2044703 (W. D. La. July 8, 2009), the district court rejected the prisoner's argument, that the prison staff's failure to respond to his informal grievances prohibited him from seeking further administrative review, as "an improper interpretation of the administrative remedies procedures." [ *Id.* at *2]. *See also, Petty v. Rush*, No. 08-CV-159-GFVT, 2010 WL 1799996573, at *2 (E.D. Ky. May 4, 2010) (same); *Fjerstad v. Palmquist*, No. 08-00274, 2008 WL 4331633, at *3 (W.D. Wash. September 17, 2008) (same); *Jammes v. Alachua County Jail*, No. 05-00052, 2007 WL 2826069, at * 5 (N. D. Fla. September 25, 2007) (same); *Williams v. Martin*, No. 04-0377, 2006 WL 1835110, at * 5 (N. D. Ga. June 30, 2006).  Thus, the lack of a response to a tendered BP-8 informal grievance request would not have prevented Kirkwood from filing a formal remedy request (BP-9) with Warden Richard Ives and then proceeding higher.

Finally, Kirkwood's broad request for injunctive relief as to any of these claims does excuse him from complying with the BOP's administrative remedy process. "Allowing inmates to bring unexhausted claims for injunctive relief to federal court would short-circuit the intent of Congress by denying prison officials the opportunity to address these complaints internally." *Alba v. Randle*, 10cv49-DCB, 2010 WL 6332058, at *2 (S. D. Miss. November 9, 2010) (quoting *Howe v. Polunsky Unit*, No. 9:08cvI42, 2010 WL 1268186, at *2 (E.D. Tex. Feb. 3, 2010)).

Accordingly, Kirkwood's Second and Third Amended Complaints will be dismissed without prejudice to him fully exhausting the claims asserted therein through the BOP's administrative remedy process and filing another *Bivens* action.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff Kelly C. Kirkwood's First, Fifth, and Sixth Amendment *Bivens* claims asserted against all of the named the defendants, in their official capacities, are **DISMISSED WITH PREJUDICE**, and the Clerk of the Court is directed to note the dismissal of all official capacity claims in the CM/ECF docket sheet;

(2) Kirkwood's First, Fifth, and Sixth Amendment *Bivens* claims asserted against (a) Richard B. Ives, Warden; (b) Eric D. Wilson, Former Warden; (c) "J." Ray Ormond, Associate Warden; and (d) Sheila R. Mattingly, Inmate Systems Supervisor,

19

in their individual capacities, are **DISMISSED WITH PREJUDICE**, and the Clerk of the Court is directed to note the dismissal of those individual capacity claims in the CM/ECF docket sheet;

(3) Kirkwood's claims asserted under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq* are **DISMISSED WITH PREJUDICE**;

(4) Kirkwood's First, Fifth, and Sixth Amendment *Bivens* claims asserted against (a) "P." Poston, (b) "J." Cornelius, (c) "K." Johnson, (d) "S." Saylor, (e) "K." Williams, and (f) "T." Doolin, in their individual capacities, stemming from the alleged legal mail-opening events of March 21, 2011, as set forth in his original Complaint, [D. E. No. 2], are **DISMISSED WITHOUT PREJUDICE** to Kirkwood fully exhausting those claims through the BOP administrative remedy process;

(5) Defendants Poston, Cornelius, Johnson, Saylor, Williams, and Doolin, in their individual capacities, must respond to Kirkwood's First, Fifth, and Sixth Amendment *Bivens* claims stemming from the alleged legal mail opening events of December 21, 2010, set forth in the original Complaint, [D. E. No. 2].

(6) Kirkwood's motion to file a First Amended Complaint, [D. E. No. 5], is **SUSTAINED**, and the Clerk of the Court shall docket Kirkwood's tendered First Amended Complaint, [D. E. No. 6], as the " Amended Complaint" filed as of August 31, 2011;

(7)    Kirkwood's motion to file a Second Amended Complaint, [D. E. No. 9], and his motion to file a Third Amended Complaint, [D. E. No. 20], are **OVERRULED** and **DENIED**;

(8)    The Clerk of the Court shall issue summonses for USP- McCreary Mail Room Specialists (a) "P." Poston, (b) "J." Cornelius, (c) "K." Johnson, (d) "S." Saylor, (e) "K." Williams, and (f) "T." Doolin, in their individual capacities;

(9).   For each of the Defendants specified in the preceding paragraph, the Clerk shall prepare the necessary number of "Service Packets" consisting of the following documents:

        a.    Completed summons forms;

        b.    Complaint [D. E. No. 2] and the First Amended Complaint, [D. E. No. 6];

        c.    This Memorandum Opinion and Order; and

        d.    Completed United States Marshals Service ("USMS") Forms 285 for each defendant to be served.

If the Clerk is unable to accurately complete any of the documents described above, the Clerk shall set forth the reason in a docket entry.

(10).   For each defendant to be served, the Clerk shall prepare three (3) Service Packets to be provided to USMS in Lexington, Kentucky, addressed as follows:

a.      to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

b.      to the Office of the Attorney General of the United States in Washington, D.C.; and

c.      for personal service at the BOP Central office in Washington, D.C.

(11). The London Clerk shall send by certified mail the required Service Packets for each of the defendants to USMS in Lexington, Kentucky. The Clerk shall enter the certified mail receipt into the record and note in the docket the date that the Service Packet was delivered to the USMS.

(12). The USMS shall serve each of the identified defendants by:

a.      Sending a Service Packet for each identified defendant by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

b.      Sending a Service Packet for each identified defendant by certified or registered mail to the Office of the Attorney General of the United States in Washington, D.C.; and

c.      Personally serving a Service Packet upon the named defendants through arrangement with the Federal Bureau of Prisons.

The USMS is responsible for ensuring that each identified defendant is

successfully served with process.  In the event that an attempt at service upon a defendant is unsuccessful, the USMS shall make further attempts and ascertain such information necessary to ensure successful service.

(13).  Within 40 days of the date of entry of this Order, the USMS shall send a Service Report to the London Clerk's Office, which the Deputy Clerk shall file in the record, stating whether service has been accomplished with respect to each identified defendant to be served.

    a.    For each defendant to be served by certified mail, the Service Report shall include:

    1.    a copy of the green card showing proof of service; or

    2.    a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

    b.    For each defendant to be personally served, the Service Report shall indicate:

    1.    that the defendant was successfully served personally and when, or

    2.    a statement explaining what efforts are being taken to locate the defendant and accomplish personal service.

23

(14). Kirkwood's failure to identify unknown John and Jane Doe Defendants, and have them served within 120 days after the date of this Memorandum Opinion and Order, will result dismissal of the claims asserted against them. FED R. CIV. P. 4(m);

(15). Kirkwood must advise the London Clerk's Office of any change in his current mailing address. Failure to do so may result in dismissal of this case.

(16). Kirkwood must communicate with the Court solely through notices or motions filed with the London Clerk's Office.

(17). For every further pleading or other document he wishes to submit to the Court, Kirkwood shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. Kirkwood shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel; and

(18). **The Court will disregard any document which has not been filed with the Clerk of the Court; which has been filed but fails to include the certificate of service of copies; or which has been sent directly to the Judge's chambers**; and

(19). The Clerk of the Court is  directed to forward a copy of this Order to

24

the Clerk of the Sixth Circuit Court of Appeals, referencing Case No. 11-6265.

This 9th day of December, 2011.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge