**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

.

| | |
|---|---|
| KELLY C. KIRKWOOD | Civil Action No. 11-CV-210-HRW |
| PLAINTIFF | |
| v. | |
| P. POSTON, ET. AL. | |
| DEFENDANTS | |
| . | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR IN THE**
**ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

The Defendants, by and through the counsel, submit the following Memorandum in

Support of its Motion to Dismiss or in the alternative, Motion for Summary Judgment.

**INTRODUCTION**

Plaintiff, Kelly Chad Kirkwood, (hereinafter "Plaintiff"), Reg. No. 09496-091, is a

federal inmate, currently housed at the United States Penitentiary located in Pine Knot, Kentucky

(hereinafter "USP McCreary"). The Plaintiff has been incarcerated at USP McCreary from

October 30, 2008, to the present. [Martinez Dec. ¶ 4; Attachment A, Inmate Profile].

The Plaintiff filed the underlying action against the named individual Defendants

pursuant to the doctrine set forth in *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971). [Complaint, 11-CV-210-HRW Docket # 2]. The Plaintiff named

as defendants Case Manager Coordinator Pam Poston, (hereinafter "Poston"), Correctional

Systems Officer Jeff Cornelius, (hereinafter "Cornelius"), Correctional Systems Officer Kermit

Johnson, (hereinafter "Johnson"), Correctional Systems Officer Sheila Saylor, (hereinafter "Saylor"), Correctional Systems Officer Katrina Williams, (hereinafter "Williams"), and Correctional Systems Officer Terry Doolin, (hereinafter "Doolin"), in their individual capacities[1].  Pursuant to the doctrine set forth in *Bivens*, the Plaintiff alleges a violation of the First, Fifth, and Sixth Amendment stemming from alleged events on December 10, 2010. [Complaint, 11-CV-210-HRW, Docket # 2].

The Plaintiff specifically alleges that on or about December 21, 2010 he requested some legal material from criminal defense attorney Henry E. Marines and instructed attorney Marines as to the proper mailing regulations concerning special /legal mail. [Complaint, 11-CV-210-HRW, Docket #2, Page Id #6]. The Plaintiff claims that on or about December 21, 2010 he was called to receive a parcel of legal documents packaged in a clear plastic bag. The Plaintiff states that even though the parcel was properly marked by Attorney Marines it was opened outside his presence by mail room staff and that documents were presumably read, out of order, and missing.  Plaintiff argues that the opening of his legal mail constituted a violation of his First, Fifth, and Sixth Amendment rights. [Complaint, 11-CV-210-HRW, Docket # 2, Page Id #6-7, 11].

Defendants Poston, Saylor, Williams, and Doolin should be dismissed from this lawsuit because they were not present in the mail room on the day Plaintiff's mail was processed. These facts show they had no involvement and/or knowledge of the allegedly unconstitutional actions. Further, these four Defendants did not assist with processing and/or handling of this package, nor did they have any knowledge about the manner in which it was handled.

---

1 On December 9, 2011 the Honorable Court dismissed several of the Plaintiff's claims to include a large number of named defendants. Only defendants Case Manager Coordinator Pam Poston, Correctional Systems Officer Jeff Cornelius, Correctional Systems Officer Kermit Johnson, Correctional Systems Officer Sheila Saylor, Correctional Systems Officer Katrina Williams, and Correctional Systems Officer Terry Doolin were required to respond to the complaint. [Memorandum Opinion and Order, 11-cv-210-HRW, Docket # 28].

The two remaining *Bivens* defendants are entitled to the defense of qualified immunity. Defendants Cornelius and Johnson were not aware of any clearly established laws which constitutionally prohibited opening an incoming mail package which was not properly marked as legal mail under established agency regulations.

The Defendants maintain that the Plaintiff fails to establish an actual injury under the First Amendment. First, the Plaintiff has failed to establish a prima facie case of "arbitrary and capricious" conduct which violates the First Amendment. The Plaintiff has also failed to allege that he suffered an actual injury – impairment to any pending or contemplated litigation – as a result of the alleged violation. The Plaintiff further fails to establish a violation of his Fifth and Sixth Amendments because those Amendments only apply to criminal proceedings and the Plaintiff has not established any involvement and/or an actual injury in a pending criminal proceeding.

## STATEMENT OF THE CASE

### A.  Incarceration History

The Plaintiff was housed at United States Penitentiary Hazleton, located in Bruceton Mills, West Virginia from June 26, 2007 to September 30, 2008. The Plaintiff was in-transit from September 30, 2008 to October 30, 2008. The Plaintiff has been incarcerated at USP McCreary from October 30, 2008, to the present. [Martinez Dec. ¶ 4; Attachment A, Inmate Profile].

### B.  Criminal History

**1.   *United States v. Kelly Chad Kirkwood*, 06-cr-084-ABJ; 06-cr-165-ABJ, United States District Court for the District of Wyoming (Cheyenne).**

The Plaintiff was charged in the United States District Court for the District of Wyoming (Cheyenne) in criminal case number 06-cr-165-ABJ with the following: conspiracy to distribute

controlled substance, in violation of Title 21, U.S.C. 946, 841(a)(1) and (B)(1)(A); carrying a firearm during and in relation to a drug trafficking offense, in violation of Title 18, U.S.C. 924(c)(1)(A) and (B)(1); use of a residence for distribution of controlled substance, in violation of Title 21, U.S.C. 856(a)(1) and (b); felon in possession of a firearm, in violation of Title 18, U.S.C. 922(g) and 924(a)(2); and racketeering – travel in interstate commerce to commit a crime of violence, in violation of Title 18, U.S.C. 1952(a)(2) and 2; Title 18, U.S.C. 1512(K) tampering with an informant.

The criminal proceedings lasted from May 17, 2006, the date a superseding indictment was issued, to February 13, 2007, the date the Judgment and Commitment order was entered on the case. On February 9, 2007, the Plaintiff was sentenced in criminal case no. 06-cr-084-ABJ and no Notice of Appeal was filed. [Martinez Dec. ¶ 5; Attachment B, *USA v. Kelly Chad Kirkwood*, 06-cr-084-ABJ].

2. *United States v. Kelly Kirkwood*, **08-cr-087-IMK, United States District Court for the Northern District of West Virginia (Clarksburg).**

On November 5, 2008, the Plaintiff was indicted for possessing a prohibited object designed and intended to be used as weapons while housed at USP Hazleton, in violation of Title 18, U.S.C. 1791(a)(2) and (b)(3).

On February 11, 2008, the Plaintiff entered into a plea agreement and on February 13, 2008 the Plaintiff was sentenced to a term of 24 months imprisonment to run consecutive with his prior sentences.

The criminal proceedings lasted from November 5, 2008, the date the indictment was issued, to February 19, 2008 the date the Judgment returned as executed. No notice of appeal was filed. [Martinez Dec. ¶ 5; Attachment D, USA v. Kelly Chad Kirkwood, 08-087-IMK].

C.     **Administrative Remedy 623144**

1.     **Informal Resolution - BP-8**

On December 22, 2010 the Plaintiff filed an Informal Resolution Form (also known as a "BP-8") at USP McCreary. The Plaintiff complained that on December 21, 2010 he received an open parcel containing legal documents from his attorney, Henry E. Marines, even though the package was marked "Legal Mail Open in Inmate Presence Only" and was allegedly "clearly" mailed by an attorney.

The Plaintiff demanded that mailroom staff be retrained on the proper handling of legal mail and threatened that he would "get punitive damages in Court." Mailroom staff was contacted in an effort to informally resolve the complaint. On January 4, 2010, Correctional Counselor G. Brown informed the Plaintiff that his Special/Legal Mail was handled according to BOP policy. [Martinez Dec. ¶ 6; Attachment E, Informal Resolution Form].

2.     **Request for Administrative Remedy - BP-9**

On January 11, 2011 the Warden at USP McCreary received a Request for Administrative Remedy (also known as a "BP-9"). In the BP-9 the Plaintiff appealed the BP-8 stating once again that on December 21, 2010 he received legal documents from his attorney via regular inmate mail even though the package was marked "Legal Mail Open in Inmate Presence Only" and was allegedly "clearly" mailed by an attorney. The Plaintiff argued that the package had been properly marked as legal mail in compliance with BOP policy and should not have been opened outside his presence.

On February 25, 2011 the Warden at USP McCreary responded to the BP-9. The Warden informed the Plaintiff that while the package was properly marked as "Legal Mail Open in Inmate Presence" the return address did not identify the sender, Henry E. Marines, as an attorney

as required by BOP policy. The Warden notified the Plaintiff that BOP Program Statement 5800.10, Mail Management Manual, states in part that, "the attorney must be adequately identified on the envelope as an attorney and the envelope must be marked Special Mail – Open Only in the Presence of the Inmate."  The request for Administrative Remedy was denied and the Plaintiff was informed that he may appeal the response to the Regional Director**.** [Martinez Dec. ¶ 6; Attachment F, Request for Administrative Remedy].

### 3.        Regional Administrative Remedy – BP-10

On March 5, 2011 the Plaintiff filed a Regional Administrative Appeal also known as a "BP-10"). In the BP-10 the Plaintiff appealed the response to the BP-9 arguing that the package was properly marked as legal mail from an attorney because it stated "Law Offices of Henry E. Marines".

On March 31, 2011 the Regional Director responded to the Plaintiff's BP-10. The Regional Director notified the Plaintiff that USP McCreary did not classify the package as Special/Legal Mail because the individual sending the package was not identified as an attorney. The Plaintiff was notified that to ensure that inmate mail is handled as Special/Legal Mail the attorney's name along with a notation that he is an attorney, and the special markings to open only in the presence of the inmate, must be visible on the parcel. The appeal was denied and the Plaintiff was notified that he can appeal the response to the General Counsel's Office.  [Martinez Dec. ¶ 6; Attachment G, Regional Administrative Remedy].

### 4.        Central Office Administrative Remedy Appeal – BP-11

On April 2011 the Plaintiff filed a Central Office Administrative Remedy Appeal (also known as a "BP-11"). In his BP-11 the Plaintiff appealed the response to the BP-10 and argued that the parcel was clearly market "Law Offices of Henry E. Marines" in compliance with BOP

policy. The Plaintiff argued that the Sixth Circuit does not require that the attorney designation appear at a particular place on the envelope and only requires an indication that the person is an attorney.

On May 26, 2011 the National Inmate Appeals Administrator responded to the BP-11. In his response the Administrator notified the Plaintiff that the sender is not clearly identified as an attorney in the parcel at issue. The Plaintiff was notified that the fact that the sender bears the same name as the law office does not indicate that the sender is indeed an attorney with the law firm. The Plaintiff was also notified that mailroom staff does not have time to conduct research as to whether a sender is indeed an attorney or not. Moreover, the Plaintiff was reminded that the package was received from the US Postal Service in a damaged condition which could have caused the contents to be rearranged. [Martinez Dec. ¶ 6; Attachment H, Central Office Administrative Remedy Appeal].

### D.      Program Statement 5265.14, Correspondence

BOP Program Statement 5265.14, Correspondence, states in pertinent part:

### 10.      SPECIAL MAIL

§ 540.18 Special mail.

(a)  The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail. The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail — Open only in the presence of the inmate".

Incoming mail meeting these requirements must be treated per this rule.  The Warden may, however, treat incoming mail that does not meet all requirements for special mail handling in the same fashion as special mail, including opening it in the inmate's presence and inspecting it only for contraband.  For example, mail from the chambers of a Federal judge or from a Member of Congress should be given special handling even if it does not have a special mail marking on the envelope.

Similarly, mail from an adequately identified sender that contains markings similar to the phrase "Special Mail — Open only in the presence of the inmate" may be given special handling. Examples of similar markings include "Attorney-Client — Open only in the presence of the inmate" and "Legal Mail — Open only in the presence of the inmate."

(b)  In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail.

### 11.    LEGAL CORRESPONDENCE

§ 540.19 Legal correspondence.

(a)  Staff shall mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter.  The inmate may be asked to sign as receiving the incoming legal mail.  This paragraph applies only if the sender has marked the envelope as specified in § 540.18.

28 CFR § 540.18 refers to Section 10 of this Program Statement.

Staff are expected to develop a master log containing the above information.  The inmate may be requested (but not required) to sign the log, indicating receipt of the legal mail.  If the inmate refuses, staff note this in the log.

(b)  The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail — Open only in the presence of the inmate".

Legal mail shall be opened in accordance with special mail procedures (see § 540.18). [Cornelius Dec. ¶ 9; Attachment I, Program Statement 5265.14].

### E.    Incoming Legal/Special Mail Examples

Mailroom staff at USP McCreary are provided with a form containing good and bad examples of incoming legal/special mail.  The examples note that a term identifying the sender as an "attorney" and the marking "Open in Presence of Inmate" are required for the parcel to be treated as Legal/Special Mail.  [Cornelius Dec. ¶ 10; Attachment J, Incoming Legal/Special Mail Examples].  The Defendants applied these standards in a literal way.

### STATEMENT OF THE FACTS

The Plaintiff was incarcerated at USP McCreary on December 21, 2010 when an incoming United States Postal Service (hereinafter "USPS") Priority Mail parcel arrived at the institution sent by Henry E. Marines. The parcel was marked "Legal Mail, Open in Inmate Presence Only" and had a return address of "Law Offices of Henry E. Marines, 8501 SW 124th Ave. STE 2044, Miami, FL 33183-4633". The December 21, 2010 parcel also had a stamp from the USPS indicating that the package was "Received in Damaged Condition". [Complaint, 11-CV-210-HRW, Docket # 2-1, P. #23]. The address lacked the specific notation that Henry E. Marines was an attorney at law or an "Esquire" which in their minds would unequivocally inform the mailroom that the package met all the requirements of special legal mail.[2]

On December 21, 2010 the mailroom at USP McCreary was staffed by Cornelius and Johnson. As mailroom staff Cornelius and Johnson each picked up, sorted, opened, inspected, processed and delivered all incoming regular and legal/special mail addressed to inmates. [Cornelius Dec. ¶ 6; Johnson Dec. ¶ 6].

Defendant Cornelius recognized his own handwriting on the label of the December 21, 2010 parcel, but due to the passage of time, he does not recall whether he or somebody else processed the parcel. Defendant Johnson did not recall who handled or processed the Plaintiff's parcel on December 21, 2010. [Cornelius Dec. ¶ 7; Johnson Dec. ¶ 7].

Both Cornelius and Johnson reviewed the December 21, 2010 label and agreed that the parcel did not specifically identify the sender as an attorney, as required by BOP Policy. [Cornelius Dec. ¶ 10; Johnson Dec. ¶ 10,].  Both Defendants agreed that under Bureau of Prisons regulation, 28 C.F.R. § 540.19, the parcel must clearly specify that the sender was an attorney in

---

2 Mailroom attendants do not necessarily know that only attorneys own law offices. A similar analogy is that pain clinics are not always owned by physicians.

order for the incoming mailing to be accorded legal mail status.  The Defendants knew that the mail came from the law office of Henry E. Marines, but not specifically that Marines was a lawyer.  [Cornelius Dec. ¶ 9-11; Johnson Dec. ¶ 9-11].

Both CSO's agreed that because the parcel in question did not contain the proper legal mail markings, it would be treated like regular incoming mail and was opened in order to inspect the contents for contraband or irregularities.  Both CSOs declared that they would not have deliberately or intentionally opened inmate legal/special mail in violation of BOP policy and/or the Plaintiff's constitutional rights. Moreover, both CSOs stated that due to the nature of their work, the volume of mail, and time constrains, they do not have time to investigate questionable pieces mail in order to decipher whether it originated from an attorney or not, if it is not clearly marked. [Cornelius Dec. ¶ 13-15; Johnson Dec. ¶ 13-15].

Defendants Johnson and Cornelius were assigned to the mailroom at the time of the alleged incident and were assigned to process incoming inmate mail. On December 21, 2010 Defendant Doolin was assigned to the Receiving and Discharge (hereinafter "R & D") position at the Correctional Systems Department and did not have any knowledge or take any role in the Plaintiff's parcel being processed in the mailroom. [Doolin Dec. ¶ 5-6; Attachment L, Correctional Systems Department Schedule, 12/19/10-3/26/11]. Defendants Poston, Saylor, and Williams were all out on annual leave and out of the institution on the week that the package was received and processed. [Poston Dec. ¶ 6; Attachment M, Request for Leave or Approved Absence; Saylor Dec. ¶ 5; Attachment N, Request for Leave or Approved Absence & Time and Attendance Report; Williams Dec. ¶ 5; Attachment O, Request for Leave or Approved Absence & Time and Attendance Report].  Due to their absence, the Defendants did not handle and/or process the Plaintiff's parcel on December 21, 2010.

**ARGUMENT**

**I.     FAILURE TO ALLEGE A  CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**A.     LACK OF PERSONAL INVOLVEMENT**

Liability for violation of a person's civil rights cannot be imposed on any defendant absent that defendant's personal actions. *Hicks v. Dewalt*, 2008 WL 2859031, 4 (E.D. Ky. 2008). The Plaintiff must describe how each individual defendant acted personally to deprive him of his constitutional rights.  Defendants without personal involvement or participation in the alleged unconstitutional act must be dismissed. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976);  *See also, Winkelman v. Doe, et. al.*, 2007 WL 2251893, 3 (E.D.Ky. 2007); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989); and *Hays v. Jefferson County, KY.*, 668 F.2d 869, 872 (6th Cir.1982).  *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir.1997); *Schreane v. Holt*, 2011 WL 6180462, 11 (M.D. Pa. 2011)(plaintiff failed to specifically show the personal involvement of the defendants with respect to his First Amendment claim that his legal mail was improperly treated as general correspondence and opened).  Bare conclusory allegations that a defendant personally deprived the Plaintiff of constitutional or statutory right are insufficient.  *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983).

Although Plaintiff names Poston, Saylor, Williams, Johnson and Doolin as defendants in this action, none of these named Defendants knowingly had any involvement in the processing of the December 21, 2010 parcel.  In fact, Defendants Poston, Saylor and Williams were not even present at the institution on December 21, 2010.  CSO Doolin was assigned to an area of the prison known as Receiving and Discharge and was not at all present in the mailroom on December 21, 2010.  Neither Poston, Saylor, Williams nor Doolin had any knowledge about the

manner in which the December 21, 2010 parcel was processed. [Poston Dec. ¶ 5-7; Saylor Dec. ¶ 5-6; Williams Dec. ¶ 5-6; Doolin Dec. ¶ 5-6]; and the case should be dismissed against them. Defendant Johnson who was in the mailroom, did not recognize the handwriting on the December 21, 2010 parcel, nor did he recall handling or processing the parcel on December 21, 2010. [Johnson Dec. ¶ 7].   Therefore, there is no personal involvement on his part that can be proven.

Because liability for violation of a person's civil rights cannot be imposed on any defendant absent that defendant's personal actions, and Kirkwood's complaint lacks any degree of specificity as to which of the named defendants were personally involved in or responsible for the alleged violation, the *Bivens* claim against the above named Defendants must be dismissed for failure to state a claim. *See Merriweather v. Zamora*, 569 F.3d 307, 319 (6th Cir. 2009).

## II.   PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS FAILS TO STATE A CAUSE OF ACTION UNDER THE FIRST, FIFTH, AND SIXTH AMENDMENTS.

On July 27, 2011 the Plaintiff filed a pro se civil rights Complaint pursuant to the doctrine asserted in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 US 388 (1971).  The Plaintiff alleges that the named defendants violated his First, Fifth, and Sixth Amendment rights by opening his legal mail on December 21, 2010.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963 (1974) the United States Supreme Court approved regulations that allowed state prison authorities to open inmates' legal mail and search it for contraband as long as the inmate was present and the contents of the mail were not read. The Supreme Court commented :

> We think it entirely appropriate that the State require any such communications to be *specially marked as originating from an attorney*, with his name and address being given, if they are to receive special treatment.  It would also certainly be permissible that prison authorities requires that a lawyer desiring to correspond with a prisoner, *first identify*

*himself* and his client to the prison officials, *to assure that the letters marked privileged are actually from members of the bar. Id.* at 576-77. (emphasis added).[3]

The Sixth Circuit addressed the issue of prisoners' right to receive mail in *Parrish v. Johnson*, 800 F.2d 600 (6th Cir.1986). The Sixth Circuit acknowledged that prisoners "have some First Amendment rights in receiving mail", but agreed that "it is clear that prison officials may place reasonable restrictions upon these rights…" *Id.* at 603. The Sixth Circuit held that "[a] *capricious* interference with a prisoner's incoming mail based upon a guard's *personal prejudices* violates the First Amendment." *Id.* at 604. (emphasis added).  The Sixth Circuit in *Parish* simply established that prisoners' mail could not be opened or read in an arbitrary or capricious fashion.

In *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir.1992), *cert. denied*, 507 U.S. 973 (1993) the Sixth Circuit declared that a prisoner's right to receive mail is protected by the First Amendment.  However, *Lavado v. Keohane*, 992 F.2d 601, 610 (6th Cir. 1993) the Court declined to find that a violation of BOP inmate legal mail regulations was *per se* a constitutional violation[4].  The Court noted that "prison officials may open prisoner's incoming mail pursuant to a *uniform and evenly applied policy* with an eye on maintaining prison security." *Id.* at 607. (emphasis applied).  Quoting *Parrish v. Johnson*, 800 F.2d at 604, the Sixth Circuit held that opening a prisoner's mail in an "arbitrary" or "capricious fashion" is what violates the First Amendment. *Id.* at 610. The Court in *Lavado*, emphazied that a BOP employee's "blatant disregard" for established regulations is what gave rise to an inference of "arbitrary or capricious action" which allowed the case to survive summary judgment[5].  *Id.* at 611. *See also, Al-jabbar*

---

3 *Phipps v. Keohane*, 1986 WL 18567 (6th Cir. 1986) (Sixth Circuit suggested that the special labeling requirements for legal mail as described in the BOP regulations are constitutional.) *unpublished opinion*.
4 *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) concerned the application of the same BOP regulations at issue in this case. 28 C.F.R. 540.18-19.
5 In *Lavado*, the BOP Staff member in question allegedly gave the inmate-plaintiff his business card after reading his the privileged mail stating that he would need it to spell his name right when the plaintiff sued him. *Id.* at 609.

*a'La v. Dutton*, 963 F.2d 373 (6th Cir.1992)("Al-Jabbar did not demonstrate that, by opening his mail outside his presence, the defendants were motivated by personal prejudice towards him, that they intended to interfere with his right of access to the courts, or that they otherwise acted in a capricious manner.") *citing Parrish*, 800 F.2d at 604. (Unpublished); *Reneer v. Sewell*, 975 F.2d 258, 259-60 (6th Cir.1992)("if the mail was actually read, and this action was motivated by retaliation as plaintiff alleges, such behavior by prison officials might constitute the type of arbitrary action proscribed in *Parrish*, 800 F.2d at 604"); *Jackson v. Norris*, 1991 WL 42244 (6th Cir.1991)("The court noted that [the prisoner]  failed to allege any facts which would suggest that [the prison official] was motivated by a 'personal prejudice' towards [the prisoner], that [the prison official] intended to interfere with [the prisoner's] access to the courts, or otherwise acted in a 'capricious manner'") *citing Parrish*, 800 F.2d at 604. (unpublished).

In *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003), the Sixth Circuit again addressed the issue of inmate legal mail and determined that the opening of three attorney letters that had been properly logged by prison staff as legal mail constituted a First Amendment constitutional violation. *Id*. at 879-80.  The *Sallier* Court agreed with *Lavado* that while "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security", the arbitrary and capricious opening and reading of inmate legal mail violates a prisoner's First Amendment right. *Sallier*, 343 F.3d at 873 *quoting Lavado*, 992 F.2d at 607.  Applying the arbitrary and capricious standard, the Sallier Court held the defendant's actions were objectively unreasonable in that they had identified and listed the letters as legal mail but still proceeded to open them outside the presence of the plaintiff.

In *Merriweather v. Zamora*, 569 F.3d 307 (6th Cir. 2009), a federal prisoner brought a First, Fifth, and Sixth Amendment action against federal prison officials at a federal pre-trial

detention facility for allegedly opening forty-one (41) pieces of legal mail properly marked as legal/special mail under BOP mail regulations.  The Sixth Circuit reviewed the mail at issue and determined that prison officials had, over a period of time, improperly opened four (4) pieces of legal mail and twelve (12) other legal letters which were properly labeled. *Id*. at 317.  The Court then found that the defendants had acted unreasonably due to the fact that defendants argued that some of letters[6] that did not specifically identify the actual sender as an attorney were not properly labeled and were correctly handled as regular inmate mail; but the defendants then stipulated that a similar letter[7] (letter #22) which did not clearly identify the sender as an attorney, was properly labeled and was properly handled as legal mail.  Because of the inconsistency in the treatment of similarly labeled inmate mail, the Sixth Circuit found that the defendants' stipulation that letter #22 was properly labeled foreclosed their argument that the remaining envelopes were improperly labeled.[8]  The Sixth Circuit also found that training sessions attended by a defendant that allowed for the writing of "attorney/client" on the envelope to satisfy the requirement that the sender identify himself as an attorney; and the statement from one of the defendants that "[W]e do not follow [sic] case laws, [sic] we only follow BOP policy" further supported the inference that staff had acted unreasonably in their differential treatment of the inmate's legal mail. *Id*. at 318.

In each of these cases, a cause of action was established by allegations that prison staff acted in an arbitrary and capricious manner.  Such "blatant disregard" for mail handling regulations violated constitutional protections.  *Merriweather*, 569 F.3d at 317;  *Lovado*, 992

---

6 Letters 10, 13, 14, 17, 18, 21, 24, 30, 31, and 33. Merriweather, 569 F.3d at 314.
7 Letter 22. *Merriweather*, 569 F.3d at 314.
8 Letter 10 was labeled from "Jerome T. Flynn, Northern District of Indiana Federal Community Defenders, Inc." but failed to clearly identify the sender as an attorney. Letters 13, 14, 17, 18, 21, 24, 30, 31, and 33 contained the term "attorney/client" and a stamp stating "open in the presence inmate only" or "special legal mail" but failed to unequivocally identify the sender as an attorney. And letter 22 was labeled from "Appellate Division Chief, Federal Public Defender's Office." but also failed to clearly identify the sender as an attorney.  *Merriweather*, 569 F.3d at 314.

F.2d at 611.

In the case at hand, the Plaintiff cannot demonstrate that the Defendants acted in an arbitrary and/or capricious manner or that they deliberately and/or unreasonably opened his December 21, 2010 mail.  In this case, Plaintiff's incoming mail was processed pursuant to a uniform and evenly applied, through literal policy, with an eye to maintaining prison security. The Plaintiff cannot demonstrate that his December 21, 2010 parcel was treated differently as demonstrated in *Merriweather* and *Lovado*; or due to "blatant disregard" for established regulations; or because of personal prejudice towards Plaintiff; or because the Defendants intended to interfere with his right of access to the courts; or that it was motivated by some sort of retaliation as noted in *Parrish*.  There is no evidence that similarly marked inmate mail was handled differently by the mailroom staff.

The Plaintiff's December 21, 2010 parcel did not in the eyes of the mailroom staff sufficiently identify the sender as an attorney.  In accordance with their training, they uniformly followed a strict application of the inmate legal/special mail requirements. Pursuant to the directions of Program Statement 5265.14, 28 C.F.R. § 540.19, and more importantly the model form provided by the "Incoming Legal/Special Mail Examples," the mailroom staff processed the Plaintiff's December 21, 2010 parcel as regular mail. [Cornelius Dec. ¶ 8-9; Johnson Dec. ¶ 8-9, Attachment I, Program Statement 5265.14; Attachment J, Incoming Legal/Special Mail Examples]. *See Hargrove v. Drew*, 2010 WL 5173932 (D.S.C.2010) ("while the envelope contained the Special Mail Marking 'open this package in presence of the inmate[']: i[t] did not contain the attorney's name or indication that the person was an attorney as required by 28 C.F.R.540.19(b)."

Assuming for the sake of argument, that the December 21, 2010 parcel was properly labeled as legal mail, the opening could have easily been the result of a simple mistake or mere negligence by a busy mailroom employee, especially in light of the fact that the package was labeled "damaged" by the post office. *See Rashaw-Bey v. Carrizales*, 2010 WL 3613953 (D.Kan.2010) ("inadvertent opening of prisoner mail is not sufficient to establish a First Amendment constitutional violation.") *citing Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir.1990).

USP McCreary's mailroom receives a large quantity of mail, especially during the holiday season. [Cornelius Dec. ¶ 14; Johnson Dec. ¶14].  In order to process the large quantities of mail received everyday as efficiently as possible it is imperative that the legal/special mail markings be precise. The defendants acted in good faith but did not see a clear and precise marking that the sender of the letter was indeed an attorney.  Therefore, the defendants acted appropriately, in processing the December 21, 2010 parcel as regular mail.

## A. FAILURE TO ESTABLISH AN ACTUAL INJURY

In assessing these types of mail interference cases, courts will often look for injuries the plaintiff may have suffered, such as damage to plaintiff's legal case or denial of access to the courts.  In order to establish a claim for denial of access to the courts, the Plaintiff must establish that the opening of legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)(the prisoner must allege and show actual prejudice resulting from this conduct by prison officials); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001)(the reading of a prisoner's legal mail outside of his presence must also include the seizing of the legal papers, or some actual harm or hindrance to a legal action resulting from this conduct); *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir.

2010), *cert. denied*, 131 S.Ct. 2093 (2011); *Rashaw-Bey, supra*, 2010 WL 3613953 at 8; *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005). *See also, Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996)(to show a claim of interference with the mail, a plaintiff must show actual injury); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).

Under the First Amendment, actual injury is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Actual prejudice to pending or contemplated litigation includes having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline. *Jackson v. Gill*, 92 F.App'x171, 173 (6th Cir. 2004).

The Plaintiff in this case has not alleged any actual prejudice due to the dismissal of pending or contemplated litigation, being unable to file a complaint, and/or missing a court-imposed deadline. The Plaintiff has not identified any pending legal proceeding that has been jeopardized by the alleged interference with his legal mail.  There is no evidence that the alleged actions by the defendants adversely affected, impaired, or impeded access to the Court in any manner. *See Clemmons v. Woods*, 40 F. App'x 23, 25 (6th Cir. 2002)(plaintiff failed to establish an actual injury resulting from alleged interference with legal mail); *Corsetti v. McGinnis*, 24 F. App'x 238, 241(6th Cir. 2001)(plaintiff failed to assert that any papers were seized or that the reading of legal mail by prison staff caused any actual injury or hindered efforts to pursue a legal claim); *Lewis v. Grider*, 27 F. App'x. 282, 283 (6th Cir. 2001)(prisoner claim of interference with access to the court due to opened inmate legal mail failed because he alleged no prejudice to any pending litigation).  *See also, Jones v. Mail Room Staff*, 74 F.App'x. 418, 419 (5th Cir. 2003); *Lewis v. Cook County Bd. Of Com'rs*, 6 F.App'x. 428, 430 (7th Cir. 2001).

The Plaintiff does not allege that the legal mail incident had any impact on any of his rights associated with the criminal process, such as, speedy trial, criminal discovery, confronting witnesses, etc.  As the Fifth and Sixth Amendment claims in this case only apply to criminal actions, the Plaintiff's claims fail to state a cause of action.  *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Alvarez v. Horel*, 2011 WL 666708, 1 (9th Cir. 2011).

In summation, Plaintiff's First, Fifth, and Sixth Amendment claims against the Defendants allege no damages, and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### III.   THE DEFENDANTS ARE ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY

Qualified immunity is an affirmative defense and allows government officials to invoke "an entitlement not to stand trial or face other burdens of litigation."  *Harrison v. Ash,* 539 F.3d 510, 517 (6th Cir. 2008).  In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court held that federal officials are entitled to qualified immunity from suit for violations of constitutional rights insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  As long as there is a "legitimate question" about the constitutionality of particular conduct, "it cannot be said that . . . such conduct violates clearly established law.*" Mitchell v. Forsyth*, 472 U.S. 511 (1985). The standard for qualified immunity was set forth by the Court in *Harlow*:

> [G]overnment official[s] performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818.  When the defense of qualified immunity is raised, the plaintiff has the burden of establishing that the law was clearly established.  *Davis v. Scherer*, 468 U.S. 183, 197 (1984);

*Sanderfer v. Nichols*, 62 F.3d 151, 153 (6th Cir. 1995).

The Supreme Court set the standard of review in *Pearson v. Callahan*, 555 U.S. 223 (2009). *Pearson* allows district courts to bypass the question of whether the facts show an actual constitutional violation by defendants. *Id.* Instead, courts are granted discretion to determine whether the law was clearly established at the time of the alleged conduct such that a government official would be on notice that the conduct was unconstitutional. *Id.*

Under the qualified immunity test established in *Pearson*, Plaintiff has failed to meet his burden of demonstrating that the defendants violated his constitutional rights that were clearly established. The two defendants processing mail that day, Johnson and Cornelius simply followed the policies and procedures in place at the time of the disputed event. Assuming either Cornelius or Johnson processed the Plaintiff's December 21, 2010 mail [Attachment P, USPS Priority Mail Label], neither were aware of any clearly established laws which constitutionally prohibited their actions. There was no prohibition opening an incoming inmate parcel which did not meet the regulatory requirements for special/legal mail status. As far as Cornelius and Johnson were aware, on December 21, 2010, pursuant to BOP Regulations, an inmate parcel that did not specifically state that the sender was an attorney was processed as regular inmate mail. [Cornelius Dec. ¶ 8-10; Johnson Dec. ¶8-10].

However, even if Plaintiff's allegations are taken as true, and the package was properly marked but opened outside of Plaintiff's presence, Cornelius and Johnson are nevertheless entitled to qualified immunity. Unlike the situation in *Sallier*, where the defendants admittedly opened letters that had been previously logged as legal mail, or the situation in *Merriweather*, where there was a stipulation by the defendants that similarly marked inmate mail had been considered legal mail on one occasion and not on another, Cornelius and Johnson were not

treating similarly marked inmate mail in an arbitrary or capricious manner.

There was nothing unreasonable in processing the December 21, 2010 parcel [Attachment P, USPS Priority Mail Label] as regular mail considering the state of the law as it existed at the time of the challenged actions.  The parcel did not strictly comply with BOP regulations, and the BOP provided examples required that the sender clearly identify himself as an attorney. [Cornelius Dec. ¶ 8-9; Johnson Dec. ¶8-9; Attachment I, Program Statement 5265.14; Attachment J, Incoming Legal/Special Mail Examples].

The Plaintiff bears the burden of proving that a clearly established right existed at the time the defendant's action took place. *See Tucker v. Callahan*, 867 F.2d 909, 913 N.3 (6th Cir. 1989). While the Circuit Court in *Merriweather* may have stated, *in dicta*, that the BOP regulation does not require that the attorney designation appear at a particular place on the envelope, *Merriweather*, *supra* at 313, the Defendants could not have been reasonably expected to anticipate that as the legal standard.  The Plaintiff argues that he notified the defendants of the *Merriweather* decision, but he allegedly did so *after* December 21, 2010[9]. [Complaint, 11-CV-210-HRW, Docket # 2, Page Id #7]. Thereby, it cannot be said that the Defendants were aware of the *dicta* in *Merriweather* at the time that the December 21, 2010 parcel [Attachment P, USPS Priority Mail Label]was processed.

The Circuit Court holding in *Merriweather* was based on Defendants' stipulation, that they had treated similarly marked pieces of mail differently. There is no such allegation against the defendants.  Even if the Defendants had been aware of the *dicta* in *Merriweather* they would not have independently changed the inmate mail review process without a BOP directive or a new interpretation of policy.    Under *Pearson* all of the Defendants are entitled to qualified

---

9 In his Complaint the Plaintiff states that on January 5, 2011 he notified former defendant Associate Warden Ormond of the *Merriweather* decision.

immunity.

### IV. SUMMARY JUDGMENT IS APPROPRIATE FOR THE DEFENDANTS

If the Court should find that dismissal under Fed. Civ. R. P. 12(b)(6) is not appropriate in this case for all Defendants, nonetheless, based upon the facts presented, summary judgment for each of the *Bivens* Defendants is appropriate.

To grant a motion for summary judgment, a court must find there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of specifying the basis upon which he contends judgment should be granted, and of identifying the portion of the record which, in his opinion, demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The focus of this inquiry is whether the alleged conduct by the prison officials was consistent with prison mail regulations and policies or whether it was arbitrary, capricious, deliberately unreasonable or a "blatant disregard" of established regulations.

Here, the two defendants who could possibly have handled the Plaintiff's December 21, 2010 parcel, Cornelius or Johnson, strictly and literally followed agency regulations on whether the package constituted legal or regular mail. There is no evidence that any other similarly marked inmate mail was handled any differently or that the Defendants deliberately or maliciously acted in violation of prison mail regulations and/or policies. Here, the two Defendants who may have handled the Plaintiff's December 21, 2010 parcel did not violate any of Plaintiff's constitutional rights and should be granted summary judgment.

<u>CONCLUSION</u>

Based on the above stated facts and authorities, dismissal of all *Bivens* claims against the

Defendants is appropriate based upon failure to state a claim upon which relief can be granted

and the doctrine of qualified immunity.  In the alternative, summary judgment should be granted

in favor of all of the *Bivens* Defendants, because no genuine issues of material fact exist,

pursuant to Fed.R.Civ.P. 56(c).

Respectfully submitted,

KERRY B. HARVEY
UNITED STATES ATTORNEY

By:                        <u>s/ Robin Gwinn             </u>
Robin Gwinn
Assistant United States Attorney
260 West Vine Street, Suite 300
Lexington, Kentucky 40507-1612
Phone: (859) 685-4863
Facsimile: (859) 233-2533
<u>Robin.Gwinn@usdoj.gov</u>

OF COUNSEL:

CARLOS J. MARTINEZ
Senior Attorney
Lexington Consolidated Legal Center
Federal Bureau of Prisons
Special Assistant U.S. Attorney

23

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March, 2012, I electronically filed the foregoing

with the clerk of the court by using the CM/ECF system. I further certify that I mailed the

foregoing document and the notice of electronic filing by first-class mail to the following non-

CM/ECF participant:

Kelly Chad Kirkwood
Reg. No. 09496-091
USP MCCREARY
U.S. PENITENTIARY
P.O. BOX 3000
PINE KNOT, KY  42635

on this the 5th day of March, 2012.


s/ Robin Gwinn_____
Robin Gwinn
Assistant United States Attorney